## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

NICHOLAS JOHNSON,

Plaintiff,

v.                                    Case No. 2:23-cv-10719-BAF-CI

GERDAU MACSTEEL, INC.,                HON. Bernard J. Friedman

Defendant.

_____

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION
OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFF'S
COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED
NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT
PROCEDURE, AND BRIEF IN SUPPORT**

_____

Plaintiff respectfully submits the following Unopposed Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure ("Motion"), and Brief in Support. For the reasons set forth below, in the accompanying declarations and the exhibits attached hereto, and in all pleadings and documents on file in this action, Plaintiff respectfully requests that the Court enter an Order:

(1) granting preliminary approval of the Settlement Agreement;

(2) conditionally certifying for settlement purposes only the Potential Class defined in the Settlement Agreement pursuant to Fed. R. Civ. P. 23(e);

(3) appointing Craig Ackermann and Brian Denlinger of Ackermann & Tilajef, P.C., and Matthew Clark of Gregory, Moore, Brooks & Clark, P.C., as Class Counsel; and

(4) approving the form and manner of distributing the proposed Notice and Claim Form.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

NICHOLAS JOHNSON,

Plaintiff,

v.                                             Case No. 2:23-cv-10719-BAF-CI

GERDAU MACSTEEL, INC.,              HON. Bernard J. Friedman

Defendant.

_____

## BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE

_____

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................ 2

   A.  Plaintiff Nicholas Johnson and Defendant's Parental Leave Policy ........................... 2

   B.  Plaintiff's EEOC Charge.......................................................................... 2

   C.  Settlement Negotiations and the Modification to Defendant's Parental Leave Policy3

   D.  The Legal Claims Underlying Plaintiff's EEOC Charge and this Class Action Lawsuit..................................................................................................... 4

III.  SUMMARY OF THE SETTLEMENT TERMS ..................................... 9

   A.  The Potential Class Members and Participating Class Members ............................... 9

   B.  Injunctive Relief ................................................................................... 10

   C.  The Gross Settlement Amount................................................................ 11

   D.  The Class Notice and Claims Administration Process for Potential Class Members to Receive Individual Settlement Payments ........................................... 12

   E.  Releases ............................................................................................... 14

   F.  Individual Settlement Payments to Participating Class Members........................... 15

   G.  Attorneys' Fees, Litigation Expenses, and Class Representative Service Award..... 16

   H.  Claims Administrator ............................................................................ 17

IV.  CLASS ACTION SETTLEMENT PROCEDURE.................................... 17

V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ........... 18

   A.  Plaintiff Has a Strong Case as to Both Liability and Damages ................................. 20

   B.  Plaintiff and Potential Class Members Would Face Real Risks in Further Litigation 21

   C.  Further Litigation Would Be Lengthy, Complex, and Costly ..................................... 23

   D.  Maintaining the Class Through Trial Would Not Be Simple ..................................... 24

   E.  The Gross Settlement Amount and Net Settlement Amount Is Substantial.............. 25

   F.  The Discovery Completed Was Sufficient For The Parties to Resolve The Case Responsibly............................................................................................ 27

   G.  Experienced Counsel Recommend Approval ........................................... 29

   H.  The Class Can Raise Objections As Part Of The Notice Process.............................. 30

   I.  Approval Is In The Public Interest.......................................................... 31

VI.  PROVISIONAL CERTIFICATION OF A CLASS IS APPROPRIATE.................. 32

   A.  Numerosity............................................................................................ 32

**B.   Commonality** ......................................................................................... **33**

**C.   Typicality** ............................................................................................... **34**

**D.   Adequacy** ................................................................................................ **35**

**E.   Certification Is Proper Under Rule 23(b)(2)** ........................................ **36**

**F.   Certification Is Alternatively Proper Under Rule 23(b)(3)** ................ **37**
    1.   Common Questions Predominate ....................................................... 37
    2.   A Class Action is Superior to Individual Actions............................... 38

**VII.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .... 39**

**VIII.   THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE .. 40**

**IX.   CONCLUSION** ......................................................................... **41**

**CONCISE STATEMENT OF ISSUES PRESENTED**

**Question**: Should the Court grant preliminary approval of the Settlement Agreement and conditionally certify the Potential Class defined in the Settlement Agreement?

    **Answer**: Yes.


**Question**: Should the Court appoint Craig Ackermann and Brian Denlinger of Ackermann & Tilajef, P.C., and Matthew Clark of Gregory, Moore, Brooks & Clark, P.C., as Class Counsel?

    **Answer**: Yes.


**Question**: Should the Court approve the form and manner of distributing the proposed Notice and Claim Form?

    **Answer**: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23;

*Sheick v. Auto. Component Carrier, LLC*, 2010 U.S. Dist. LEXIS 77676 (E.D. Mich. Aug. 2, 2010);

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003);

*Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013); and

*Bowman v. Art Van Furniture, Inc*., 2018 U.S. Dist. LEXIS 207674 (E.D. Mich. Dec. 10, 2018).

## I.   INTRODUCTION

Plaintiff Nicholas Johnson ("Plaintiff"), on behalf of himself and the class of persons he seeks to represent, and Defendant Gerdau Macsteel, Inc. ("Defendant" (together with Plaintiff, the "Parties") have agreed to settle this putative class action in which Plaintiff alleges that Defendant discriminated against numerous non-union birth fathers in violation of federal and state law in its provision of paid parental leave. The class settlement, which provides monetary relief to the Class and injunctive relief in the form of a modification of Defendant's paid parental leave policy to remove gender as a condition of being allowed to take paid parental leave following the birth of a child, is fair, adequate, and reasonable, and was reached through arm's-length negotiations facilitated by experienced mediator Dina Jansenson, Esq.

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff requests that the Court: (1) grant preliminary approval of the Settlement Agreement ("Settlement"), attached as Exhibit 2 to the Declaration of Craig Ackermann (the "Ackermann Decl.");[1] (2) conditionally certify the proposed class under Rule 23(b)(2) and/or Rule 23(b)(3) for settlement purposes only; (3) appoint Craig Ackermann and Brian Denlinger of Ackermann & Tilajef, P.C. ("A&T"), and Matthew Clark of Gregory, Moore, Brooks & Clark, P.C. ("GMB&C"), as Class Counsel; and (4) approve the proposed Notice of Class Action Settlement ("Notice," attached as Ex. A to the Settlement)

---

[1] Unless otherwise indicated, all exhibits are attached to the Ackermann Declaration, and all capitalized terms herein have the definitions set forth in the Settlement.

and proposed Claim Form (attached as Ex. B to the Settlement) and direct their distribution. Defendant does not oppose the relief sought in this Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff Nicholas Johnson and Defendant's Parental Leave Policy

Plaintiff worked for Defendant at its Monroe, Michigan steel mill as a non-union R&D Technical Specialist between 2021 and August 1, 2022. Compl., ¶ 13, ECF No. 1 ("Compl."). Plaintiff's wife gave birth to their child on November 6, 2021. *Id.* ¶ 14. Upon the birth of Plaintiff's child, Defendant provided Plaintiff with 30 days of unpaid paternity leave after Plaintiff requested parental leave, and Plaintiff in fact took 30 days of unpaid paternity leave. *Id.*

At the time of Plaintiff's child's birth, Defendant's parental leave policy—which only applied to non-union positions—provided a much more generous 12-14 weeks of paid maternity leave for "the employee who gave birth," including six weeks of fully paid maternity leave "for such things as baby bonding and/or dealing with baby medical matters." *Id.* ¶ 15. At the time Plaintiff was offered and took 30 days of unpaid paternity leave, he understood that if he was a birth mother, he would be eligible to receive 6-weeks of paid parental leave "for such things as baby bonding and/or dealing with baby medical matters" through Defendant's parental leave policy, but that as a birth father, he was excluded from receiving any paid parental leave. *Id.*

### B. Plaintiff's EEOC Charge

On August 30, 2022, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Michigan

Department of Civil Rights against Defendant for individual and class claims of discrimination based on sex and/or gender, challenging Defendant's policy and practice of denying paid parental leave to birth fathers, on behalf of himself and a class of similarly situated male employees who had been denied paid parental leave by Defendant. See Ackermann Decl., Exhibit 1 ("EEOC Charge"). All administrative prerequisites necessary to initiate this action were satisfied. Compl., ¶ 12.

### C. <u>Settlement Negotiations and the Modification to Defendant's Parental Leave Policy</u>

Subsequent to Plaintiff submitting his EEOC Charge, the Parties, through their attorneys, engaged in informal settlement discussions regarding the matter, including an exchange of discovery documents and information and an all-day, private mediation session. Ackermann Decl., Exhibit 2 ("Settlement"), ¶¶ 26-27.

Specifically, from October 2022 through January 2023, the Parties engaged in settlement discussions and informal discovery to learn about Defendant's parental leave policy and how Potential Class Members were impacted by the policy. Ackermann Decl., ¶ 16. In early-January 2023, Defendant provided Plaintiff with informal discovery documents and information, including a spreadsheet from Defendant's leave administrator showing non-union employees who requested FMLA leave between 2019 – 2022 for reasons of pregnancy/childbirth and/or to bond with a new child; and a spreadsheet showing the list of non-union employees who added newborns as dependents to Defendant's group health plan between September 2019 – October 2022. *Id.* ¶ 17. Thereafter, the Parties engaged in

extensive negotiations regarding possible resolution, which included an all-day, private mediation session with respected employment law mediator Dina Jansenson, Esq. *Id.* During the mediation process, the Parties exchanged detailed mediation statements on the claims, defenses, and potential damages. *Id.* On January 27, 2023, through mediation, the Parties reached agreement regarding the general terms of the Settlement, which were memorialized in a Memorandum of Understanding. *Id.*

Between January 2023 and March 2023, the Parties exchanged long-form settlement agreement drafts, developed a claims process, a Claim Form, and a proposed Notice of Class Action Settlement. *Id.* ¶ 18. The Parties ultimately negotiated a long-form Settlement Agreement (i.e., the Settlement), which was fully-executed by the Parties on March 21, 2023. *Id.* During this process, all negotiations were conducted on an arm's-length basis. *Id.* Moreover, as a material term of the Parties' Settlement, and following the receipt of Plaintiff's EEOC Charge, Defendant modified the maternity leave policy at issue in this dispute (i.e., its policy allowing paid baby bonding parental leave time to female employees, but not to male employees) to remove gender as a condition of being allowed to take paid parental leave following the birth of a child. *Id.*

D. **The Legal Claims Underlying Plaintiff's EEOC Charge and this Class Action Lawsuit**

On March 28, 2023, Plaintiff filed this putative class action alleging that Defendant violated Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-2, *et seq.*) ("Title VII"); the Federal Equal Pay Act (29 U.S.C. § 206(d) and 215(a)(2)) ("EPA"); and Michigan's Elliot-Larsen Civil Rights Act (MCL

37.2202(1)) ("ELCRA") and Workforce Opportunity Wage Act (MCL 408.423(1)) ("WOWA") by depriving birth fathers of paid parental leave benefits that are equal to what Defendant afforded to birth mothers. Compl. ¶ 4; Settlement, ¶ 24. Plaintiff seeks to represent a nationwide class of all males who had a baby through natural birth (i.e., not adoption or placement through foster care) at any time from August 30, 2019 through December 31, 2022 (i.e., the "Class Period") while they were employed by Gerdau Macsteel, Inc. in a non-union position (these individuals are referred to as the "Potential Class Members"). Settlement, ¶¶ 5-6. Defendant denies any liability and any wrongdoing.

Plaintiff alleged that Defendant's maternity leave policy is facially illegal, as gender discriminatory, under Title VII and the EPA,[2] since it excludes male employees (i.e., fathers who did not give birth to their children) from parental leave for "baby bonding and/or dealing with baby medical matters" which are unrelated to maternal recuperation from childbirth.

Under Title VII's prohibition on sex discrimination, an employer violates the statute when it "discriminate[s]" against individuals in "compensation, terms, conditions, or privileges of employment" on the basis of sex. 42 U.S.C. § 2000e-2(a)(1); *see Newport News Shipbuilding Co. v. EEOC*, 462 U.S. 669, 684-85 (1983). A policy or practice intentionally discriminates based on sex when "evidence shows

---

[2] Plaintiff alleged that Defendant's parental leave policy similarly violated Michigan's ELCRA and WOWA. Notably, "[c]ases brought under ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). WOWA similarly mirrors the Equal Pay Act.

'treatment of a person in a manner which but for that person's sex would be different.'" *L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711 (1978). Consequently, men and women may be subject to sex discrimination. *See Oncale v. Sundowner Offshore Servs. Inc*., 523 U.S. 75, 80 (1998) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.") (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 25 (Ginsburg, J., concurring)).

Fringe benefits, including any period of paid or unpaid parental leave, are among the terms, conditions or privileges of employment that must be offered on a non-discriminatory basis. *Newport News*, 462 U.S. at 683; *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 279 n.10 (1987). While employer policies may account for physiological differences related to pregnancy, a condition that is unique to women, they may not distinguish between male and female employees based on "stereotypical notions about pregnancy and the abilities of pregnant workers," or based on gender stereotypes related to women's presumed role as caregivers. *Guerra*, 479 U.S. at 290.

For these reasons, the United States Supreme Court has held that while employers may allow employees who give birth time off under sick or temporary disability leave policies to physically recover from childbirth, a disparity in the period of leave given to female and male employees must be limited to "the period of *actual physical disability* on account of pregnancy, childbirth, or related medical conditions." *Id.* (emphasis in original). In contrast, the Court has cautioned that

statutes or policies that grant unequal caregiving leave between men and women are premised upon unlawful gender stereotypes that violate Title VII. *Id.* As the Supreme Court also explained in *Nevada Department of Human Resources v. Hibbs*:

> Stereotypes about women's domestic roles are reinforced by parallel stereotypes presuming a lack of domestic responsibilities for men. Because employers continued to regard the family as the woman's domain, they often denied men similar accommodations or discouraged them from taking leave. These mutually reinforcing stereotypes created a self-fulfilling cycle of discrimination that forced women to continue to assume the role of primary family caregiver, and fostered employers' stereotypical views about women's commitment to work and their value as employees. Those perceptions, in turn, Congress reasoned, lead to subtle discrimination that may be difficult to detect on a case-by-case basis.

538 U.S. 721, 736 (2003). The Supreme Court pointed to state laws relating to family leave that provided only maternity leave as evidence of the "pervasive sex-role stereotype that caring for family members is women's work," and found that such stereotypes provided sufficient basis to abrogate state sovereign immunity under the Family and Medical Leave Act ("FMLA"). *Id.* at 731-32, 737, nn.5-6.

Consistent with *Guerra* and *Hibbs*, courts have long held that any leave (paid or unpaid) that is provided for the purpose of bonding with or caring for a newborn that exceeds an amount necessary for a mother to recover from childbirth must be offered equally to both men and women, and have invalidated policies that provide leave only to women in excess of that time. For example, in *Knussman v. Maryland*, 272 F.3d 625 (4th Cir. 2001), the Fourth Circuit held that Maryland's policy and practice of refusing to provide FMLA leave to fathers violated equal

protection, noting that "gender classifications that appear to rest on nothing more than conventional notions about the proper station in society for males and females have been declared invalid time and again by the Supreme Court." *Id.* at 636. *See, e.g., Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh*, 903 F.2d 243, 248 (3d Cir. 1990); *Chavkin v. Santaella*, 81 A.D.2d 153, 157-58 (N.Y. App. Div. 1981); *Johnson v. Univ. of Iowa*, 431 F.3d 325, 328 (8th Cir. 2005).

The same rule is found in the EEOC's guidance, which distinguishes between "leave related to any physical limitations imposed by pregnancy or childbirth . . . and leave for purposes of bonding with a child and/or providing care for a child." U.S. Equal Emp. Opportunity Comm'n, No. 915.003, *EEOC Enforcement Guidance on Pregnancy Discrimination and Related Issues*, § I.C.3 (June 25, 2015), *available at* http://www.eeoc.gov/laws/guidance/pregnancy_guidance.cfm#IC3. The EEOC explains that "parental leave must be provided to similarly situated men and women on the same terms[,]" and if "an employer extends leave to new mothers beyond the period of recuperation from childbirth (e.g. to provide the mothers time to bond with and/or care for the baby), it cannot lawfully fail to provide an equivalent amount of leave to new fathers for the same purpose." *Id.*[3]

---

[3] *See also* U.S. Equal Emp. Opportunity Comm'n, No. 915.002, *Enforcement Guidance: Unlawful Disparate Treatment of Workers with Caregiving Responsibilities* (2007), *available at* http://www.eeoc.gov/policy/docs/caregiving.html ("[E]mployers should carefully distinguish between pregnancy-related leave and other forms of leave, ensuring that any leave specifically provided to women alone is limited to the period that women are incapacitated by pregnancy and childbirth.").

In the immediate action, Plaintiff asserts that as a result of Defendant's practice of only allowing non-union birth mothers to receive six weeks of fully paid maternity leave "for such things as baby bonding and/or dealing with baby medical matters," non-union birth fathers who wanted to serve as primary caregivers received six fewer weeks of paid parental leave than non-union birth mothers (i.e., non-union birth fathers received zero weeks of paid parental leave), and that this differential in paid parental leave is unrelated to birth mothers' physical need to recover from childbirth. See Compl. ¶¶ 2-3, 15-18. Plaintiff asserts that this policy and practice constitutes a sex-based classification that treats male employees in a manner that "but for [their] sex" would be different, and rests upon impermissible sex-based stereotypes about men's role as breadwinners and women's role as caregivers, thus violating Title VII, the EPA, ELCRA, WOWA, and/or equivalent state antidiscrimination laws. *Id.* ¶¶ 4, 29, 32-50.

## III.   SUMMARY OF THE SETTLEMENT TERMS

The Settlement provides both injunctive relief and monetary relief to address Plaintiff's concerns with Defendant's paid parental leave policy and to compensate non-union birth fathers who were adversely affected by Defendant's paid parental leave policy.

### A. **The Potential Class Members and Participating Class Members**

Under the Settlement, the Potential Class Members are defined as follows:

[A]ll males who had a baby through natural birth (i.e., not adoption or placement through foster care) at any time during the Class Period while they were employed by Gerdau Macsteel, Inc. in a non-union position

Settlement, ¶ 5. The "Class Period" for the Potential Class Members is from August 30, 2019 (three years prior to when Plaintiff filed his EEOC Charge) through December 31, 2022 (when Defendant modified the maternity leave policy allowing baby bonding time to female employees, but not to male employees, to remove gender as a condition of being allowed to take paid parental leave following the birth of a child). *Id.* ¶ 6. While all non-union males who had a baby through natural birth while employed by Defendant during the Class Period are Potential Class Members, as described *infra*, the Class Notice and Claim Form shall be sent by the Claims Administrator to all males who were employed by Defendant in a non-union position during the Class Period by first-class mail and by email. *Id.* ¶¶ 43-44.

The "Participating Class Members" are defined as "all Potential Class Members who submit timely and valid Claim Forms along with Proof of Paternity,[4] and who have not timely and properly opted-out of the Settlement." *Id.* ¶ 17.

**B. Injunctive Relief**

The Parties have agreed to meaningful injunctive relief that addresses the primary claim in this case, that Defendant prevented and/or discouraged non-union birth fathers from being primary caregivers and/or receiving paid parental leave on

---

[4] "Proof of Paternity" means "proof that a Potential Class Member had a baby during the Class Period. Proof of paternity may be provided through a child's birth certificate, the addition of a newborn to their Gerdau-provided health insurance plan or the health insurance plan of their spouse during the Class Period, or through other reasonable evidence which Plaintiff and Defendant agree to jointly evaluate, with assistance of the claims administrator, on a good faith basis. If a Potential Class Member submits a Claim Form without Proof of Paternity, the Claims Administrator shall use its best efforts to contact the Potential Class Member and request Proof of Paternity." Settlement, ¶ 19.

the same terms as non-union birth mothers. Specifically, under the Settlement, Defendant will continue to maintain the gender-neutral paid parental leave policy that was implemented on January 1, 2023. The terms of the Settlement provide that, "[a]s a material term of this Agreement, Defendant modified the maternity leave policy at issue in this dispute (i.e., its policy allowing baby bonding time to female employees, but not to male employees) to remove gender as a condition of being allowed to take paid parental leave following the birth of a child." Settlement, ¶ 67.[5]

C. **The Gross Settlement Amount**

The Settlement establishes a "Gross Settlement Amount" that is presently unknown prior to the Class Notice process, but will consist of the following payments by Defendant: (a) a $6,000 Individual Settlement Payment to every Participating Class Member, plus the employer-side payroll taxes associated with the W-2 portion of each Individual Settlement Payment; (b) attorneys' fees equaling 1/3rd of each Participating Class Members' Individual Settlement Payment on top of and in addition to the Individual Settlement Payment (i.e., $2,000 per valid claim, 1/3rd of the combined amount of each $6,000 Individual Settlement Payment), which includes all attorneys' fees and expenses incurred to date and to be incurred in documenting the Settlement, securing trial and appellate court approval of the

---

[5] This paid parental leave policy change also constitutes a very significant forward-looking monetary component. For example, if there are 25 non-union males per year that now receive paid parental leave, that would equal approximately $150,000 per year in monetary benefits to the males still working for Defendant, in perpetuity (i.e., 25 x $6,000). Plaintiff's counsel will not claim any fees on those future payments; however, their existence shows that the percentage of fees sought in this action is far less than 25% of the total amount obtained, as explained *infra*.

Settlement, attending to the administration of the Settlement, and obtaining a dismissal of the Litigation; (c) $5,000 for Class Counsel's out-of-pocket litigation costs; (d) $10,000 for a Class Representative enhancement award to Plaintiff; and (e) all actual claims administration costs. Settlement, ¶ 12.[6] The "Net Settlement Amount" consists of the total amount of all $6,000 Individual Settlement Payments to Participating Class Members, which are paid in equal shares to all Participating Class Members (i.e., to all Potential Class Members who submit a timely and valid Claim Form along with Proof of Paternity). *Id.* ¶ 15.

**D. <u>The Class Notice and Claims Administration Process for Potential Class Members to Receive Individual Settlement Payments</u>**

Within 15 days after the Court's entry of its order granting preliminary approval, Defendant shall provide the Claims Administrator with the names, last known addresses, email addresses, phone numbers, Social Security numbers, and dates of employment of all males who were employed by Defendant in a non-union position during the Class Period. Settlement, ¶ 43. Within 30 days after the Court's entry of its order granting preliminary approval, the Court-approved Class Notice

---

[6] As an example, if 5% of the approximate 800 males who will receive the Class Notice submit a valid Claim Form (i.e., 40 employees), then the Gross Settlement Amount would be $240,000 in Individual Settlement Payments (40 x $6,000), $80,000 in attorneys' fees, plus litigation costs, Plaintiff's enhancement award, and claims administration costs. If 10% submit valid Claim Forms (i.e., 80 employees), the Gross Settlement Amount would be $480,000 in Individual Settlement Payments (80 x $6,000), $160,000 in attorneys' fees, plus litigation costs, Plaintiff's enhancement award, and claims administration costs. Plaintiff's counsel believes it is unlikely more than 80 Potential Class Members will submit valid Claim Forms given that the majority of the approximate 800 non-union male employees who will receive the Notice likely did not have children during the Class Period.

and Claim Form shall be sent by the Claims Administrator to all males who were employed by Defendant in a non-union position during the Class Period by first-class mail and by email. *Id.* ¶ 44.

To receive an Individual Settlement Payment, Potential Class Members must submit to the Claims Administrator a valid Claim Form along with Proof of Paternity by the "Claim Deadline" (i.e., Claim Forms must be postmarked and/or received via email by the Claims Administrator within 60 calendar days after the initial mailing and emailing of the Class Notice and Claim Forms). *Id.* ¶¶ 49, 52. Class Counsel and Defendant's Counsel may mutually agree, but need not, in their respective sole discretion, to accept late-filed Claim Forms that are received prior to the Settlement Effective Date. *Id.* ¶ 52. If a Potential Class Member submits both a timely and valid Claim Form with Proof of Paternity and a Request for Exclusion, the Claims Administrator shall resolve the inconsistency by treating the conflicting submissions as a valid submission that will make him or her a Participating Class Member. *Id.* ¶ 54. If a Potential Class Member disagrees with the Claims Administrator's determination of whether a timely and valid Claim Form along with valid Proof of Paternity was submitted—after consultation with Class Counsel and Defendant's counsel on a good faith basis—the Potential Class Member may dispute such information by submitting to the Claims Administrator additional documents, information, and/or other evidence to prove that they had a baby by natural birth during the Class Period. *Id.* ¶ 53.

The Notice and Claim Form provides all males who were employed by Defendant in a non-union position during the Class Period with notice of the

Settlement, its terms and their right to submit a Claim with Proof of Paternity if they had a baby by natural birth during the Class Period (i.e., if they are Potential Class Members), and their right to opt out, object, or appear at the final approval hearing. *Id.* ¶ 49; Settlement, Ex. A. The Class Notice and Claim Form explain that the Potential Class Members who wish to receive any portion of the Settlement must submit a timely and valid Claim Form along with Proof of Paternity, and that only those who submit a timely and valid Claim Form can receive an Individual Settlement Payment. *Id.*

Potential Class Members who wish to object to the proposed Settlement must mail a written objection to the Claims Administrator within 60 calendar days from the mailing of the Class Notice and Claim Form (i.e., by the "Objection Deadline"). *Id.* ¶ 51. Potential Class Members who wish to opt-out of the Settlement must send a written Request for Exclusion to the Claims Administrator requesting to opt-out of the Class within 60 calendar days from the mailing of the Class Notice and Claim Form (i.e., by the "Opt-Out Deadline"). *Id.* ¶ 50. Any Potential Class Member who properly requests to opt-out will not be entitled to receive an Individual Settlement Payment and will not be bound by the Settlement or have any right to object, appeal, or comment thereon. *Id.*

## E. <u>Releases</u>

Potential Class Members who do not opt-out of the Settlement will release claims under federal and state law against Defendant that were made or could have been made to challenge Defendant's paid parental leave policy or application of it as sex discriminatory during the Class Period. Specifically, all Potential Class

Members who do not opt-out of the Settlement shall release and discharge Defendant from "all claims and causes of action . . . in the Complaint during the Class Period, including claims for gender-based discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq*.); the Federal Equal Pay Act (29 U.S.C. § 206(d)); and Michigan's Elliot-Larsen Civil Rights Act (MCL 37.2202(1)) and Workforce Opportunity Wage Act (MCL 408.423(1)); as well as any other applicable state law based on the location of the Potential Class Members based on alleged violations resulting from Defendant's maternity leave policy and/or practice of only allowing its female employees, but not male employees, to take 6-weeks of parental leave time off for baby bonding and/or dealing with baby medical matters, as well as with all liquidated damages, penalties, interest and other amounts recoverable under said causes of action under any state or federal law, to the fullest extent possible." Settlement, ¶ 60.

## F. <u>Individual Settlement Payments to Participating Class Members</u>

Participating Class Members shall each receive an Individual Settlement Payment of $6,000 on a gross basis, which shall be allowed as follows: $3,000 is reportable as W-2 wages, less applicable employee-side tax withholdings and deductions for which an IRS Form W-2 will be issued to each Participating Class Member (Defendant shall pay its employer-side payroll taxes associated with the W-2 portion of each Individual Settlement Agreement); and $3,000 reported as 1099 income for which an IRS Form 1099 will be issued to each Participating Class Member. Settlement, ¶¶ 13, 38(a).

Since attorneys' fees and litigation costs, the Class Representative Service Award to Plaintiff, and all actual claims administration costs shall be paid by Defendant on top of an in addition to the Individual Settlement Payments, only the employee-side tax withholdings and deductions on the W-2 portion of Individual Settlement Payments will be taken out of each Participating Class Member's equal Individual Settlement Payment share. *Id.* ¶ 12. Participating Class Members will have 180-days to cash the checks that they receive, and if any Participating Class Members do not cash their checks within the 180-day Check Cashing Period, any funds associated with such uncashed checks shall be distributed pursuant to a *cy pres* to The Fatherhood Project, subject to approval by the Court. *Id.* ¶¶ 1, 37[7], 59.

## G. Attorneys' Fees, Litigation Expenses, and Class Representative Service Award

The Settlement provides that Defendant shall pay Class Counsel attorneys' fees equaling 1/3rd of each Participating Class Members' Individual Settlement Payment on top of and in addition to the Individual Settlement Payment (i.e., $2,000 per valid claim), subject to Court approval. Settlement, ¶¶ 12, 34. The Settlement also provides that Defendant shall pay reimbursement of class counsel's out-of-pocket costs up to $5,000 on top of and in addition to the Individual Settlement Payments, subject to approval by the Court. *Id.* Class Counsel will file a motion for approval of attorneys' fees and litigation costs with their Final Approval Motion.

---

[7] Paragraph 37 erroneously refers to the Check Cashing Period as 90 days; however, the parties agree this is a typographical error. The Check Cashing Period is 180 days as set forth in ¶¶ 1 and 59 the Settlement.

The Settlement provides that Defendant shall pay Plaintiff a Class Representative Service Award of $10,000, subject to Court approval. *Id.* ¶¶ 12, 35. The Service Award amount will be in addition to Plaintiff's Individual Settlement Payment, and Plaintiff must execute a full general release of all claims against Defendant through the date the general release is signed. *Id.*

**H. <u>Claims Administrator</u>**

The Parties agree and propose that the Court appoint CPT Group, Inc. as the Claims Administrator. See Ackermann Decl., ¶ 24. CPT Group, Inc. is experienced in claims administration, having administered thousands of class action settlements (see https://www.cptgroup.com/about-us/). *Id.* Defendant shall pay all of the actual costs of the Claims Administrator to fully administer this Settlement on top of and in addition to all Individual Settlement Payments. Settlement, ¶¶ 12, 36.

**IV.   CLASS ACTION SETTLEMENT PROCEDURE**

The well-established procedure for approving class action settlements involves three steps: (1) preliminary approval of the proposed settlement after submission to the court of a written motion; (2) notice of the settlement to all class members; and (3) a final settlement approval hearing where the court will consider whether the settlement is fair, adequate, and reasonable such that it should be approved. Fed. R. Civ. P. 23(e); *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13:1 (5th ed. 2018). Here, Plaintiff requests that the Court take the first step by granting preliminary approval, certifying the Potential Class, and approving the proposed Class Notice.

Plaintiff respectfully requests the Court approve the schedule for the settlement approval process set forth in the Proposed Order Granting Plaintiff's Motion for Preliminary Approval.

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"The Sixth Circuit has recognized that 'the law generally favors and encourages the settlement of class actions.'" *Smith v. SAC Wireless, LLC*, 2022 U.S. Dist. LEXIS 96760, at *8 (E.D. Mich. May 31, 2022) (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981)). *See also Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) ("[P]ublic policy strongly favors settlement of disputes without litigation.") (citation omitted); *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*General Motors*") ("[F]ederal policy favor[s] settlement of class actions . . . ."). Courts encourage early class settlements, which allow class members to recover without undue delay and preserve judicial resources. *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy . . . .").

A preliminary approval inquiry "is not an onerous one" and is ordinarily "made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." *Sims v. Pfizer, Inc.*, 2015 U.S. Dist. LEXIS 153480, at *3 (E.D. Mich. Nov. 13, 2015) (citing *In re Inter-Op Hip*

*Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337 (N.D. Ohio 2001)), which recognized that "this threshold inquiry often involves no more than an informal presentation." Where a settlement is not collusive or the product of fraud or overreaching by the negotiating parties, and "appears to fall within the range of possible approval" as "fair, reasonable, and adequate" to the class members, a court should grant preliminarily approval. *Sheick v. Auto. Component Carrier, LLC*, 2010 U.S. Dist. LEXIS 77676, at *30-32 (E.D. Mich. Aug. 2, 2010) (citing *In re Inter-Op Litig.*, 204 F.R.D. at 350). *See also Daoust v. Maru Rest., LLC*, 2019 U.S. Dist. LEXIS 26587, at *2-3 (E.D. Mich. Feb. 20, 2019).

Courts balance numerous factors to preliminarily assess the fairness of a proposed settlement, including:

> (a) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (b) the risks, expense, and delay of further litigation; (c) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (d) the amount of discovery completed and the character of the evidence uncovered; (e) whether the settlement is fair to the unnamed class members; (f) objections raised by class members; (g) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (h) whether the settlement is consistent with the public interest.

*Sheick*, 2010 U.S. Dist. LEXIS 77676 at *31 (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003)). As explained below, because these factors strongly weigh in favor of preliminary approval in this action, the Court should grant preliminary approval of the Settlement and direct that notice under Rule

23(e) be given to the Potential Class Members of a final approval hearing. *Daoust*, 2019 U.S. Dist. LEXIS 26587 at *2-3.

**A. <u>Plaintiff Has a Strong Case as to Both Liability and Damages</u>**

Plaintiff's discrimination claims under Title VII, the EPA, ELCRA, WOWA, and/or equivalent state antidiscrimination laws are strong. Similar to the cases described in Section II.D, *supra*, Defendant's previous practice of only providing non-union birth mothers with six weeks of fully paid maternity leave "for such things as baby bonding and/or dealing with baby medical matters" constitutes sex discrimination. Defendant's policy of allowing six weeks of "baby bonding" leave only for non-union birth mothers was facially illegal since it was not a pregnancy-related disability policy and it was unrelated to the period of time necessary for recovery from childbirth.[8] Defendant's paid parental leave policy "for such things as baby bonding and/or dealing with baby medical matters" should therefore have

---

[8] Defendant's parental leave policy, which is the subject of this action, stated the following in its entirety: "<u>Length of Leave</u> – Following the birth of a child, **the employee who gave birth** will be eligible for six (6) workweeks of short-term disability for natural birth, or eight (8) workweeks of short-term disability for C-section. Short-term disability pays 60% of base pay up to a defined weekly maximum. For Salaried Exempt employees, the first two (2) workweeks of short-term disability are paid at 100% of base pay. Following the end of the six (6) weeks or eight (8) weeks of short-term disability, **the same employee will also be entitled to six (6) consecutive weeks of Maternity Leave, paid at 100% of base pay. This leave is provided for such things as baby bonding and/or dealing with baby medical matters.** It must be taken immediately following disability leave, and may not be taken intermittently. If the employee returns to work prior to using the full six (6) weeks of Maternity Leave, the employee has forfeited use of any additional Maternity Leave." Ackermann Decl., ¶ 14 (emphasis added).

been made available on a gender-neutral basis. See *Guerra*, 479 U.S. at 290; *Hibbs*, 538 U.S. at 730; *Schafer*, 903 F.2d at 248.[9]

In essence, Defendant's "baby bonding" paid parental leave policy rested upon and perpetuated stereotypes about men's role as breadwinners and women's role as caregivers that the Supreme Court and other courts have repeatedly rejected. *See Hibbs*, 538 U.S. at 736; *Knussman*, 272 F.3d at 637. The application of Defendant's "baby bonding" paid parental leave policy could be expected to result in "a self-fulfilling cycle of discrimination that forced women to continue to assume the role of primary family caregiver, and fostered employers' stereotypical views about women's commitment to work and their value as employees." *Hibbs*, 538 US at 736. Plaintiff and the numerous non-union birth fathers otherwise eligible to take paid "baby bonding" parental leave therefore have a strong case for liability under Title VII, the EPA, ELCRA, WOWA, and/or and parallel state laws.[10]

**B.** **Plaintiff and Potential Class Members Would Face Real Risks in Further Litigation**

---

[9] Defendant's "baby bonding" policy is thus unlike policies that have been upheld as sufficiently related to the period of pregnancy disability. *See, e.g., Kucharski v. CORT Furniture Rental*, 342 F. App'x 712, 713 (2d Cir. 2009) (employer's policy providing four weeks of leave was "applie[d] uniformly regardless of sex or medical condition."); *Johnson*, 431 F.3d at 329 (upholding policy that provided 6 weeks of paid leave for biological mothers and none to fathers in light of the policy's purpose of providing time to recover from childbirth).

[10] Furthermore, even if Plaintiff failed in showing that Defendant's "baby bonding" paid parental leave policy relied on a sex-based classification or sex-based stereotyping, he would very likely be able to prove that the policy had a disparate impact on birth fathers. See 42 U.S.C. § 2000e-2(k)(1)(A)(i); *Ricci v. DeStefano*, 557 U.S. 557, 578 (2009).

Despite the strength of Plaintiff's class claims on the merits, he fully recognizes that he would face significant legal and procedural hurdles in establishing classwide liability and damages. As a general matter, "complex litigation and class action suits" are "'notoriously difficult and unpredictable.'" *Thomsen v. Morley Co*., 2022 U.S. Dist. LEXIS 201703, at *17 (E.D. Mich. Nov. 4, 2022) (quoting *Granada Invs., Inc. v. DWG Corp*., 962 F.2d 1203, 1206 (6th Cir. 1992)). Plaintiff recognizes the substantial risks of the litigation, including the possibility that the case, if not settled now, might result in no recovery or a recovery far less favorable to the Class. He is also aware that if the action continued, any recovery may not occur for several years.

Defendant would likely argue that: 1) Plaintiff's class action may not meet numerosity or ascertainability requirements on a contested motion if we had a low claims rate among the approximate 800 males who will receive Notice; 2) the purported injury is for the intangible loss of baby bonding time, which is not a wage claim and/or cannot be calculated individually; 3) Plaintiff could only obtain injunctive relief if he was a current employee at the time this action went to trial and through judgment, which he is not; 4) it has a waiver defense, since many Potential Class Members are hourly-paid, rather than salaried employees, and they therefore may not have taken all or any of the six weeks of baby bonding parental leave time since hourly-paid employees make a significant amount of their compensation through overtime pay (i.e., many hourly-paid employees would have chosen to work and earn overtime pay rather than take parental leave); 5) that Plaintiff, as a salaried employee, was among the highest paid birth fathers employed by Defendant,

meaning other Potential Class Members would not be entitled to the same amount of potential damages and/or that the circumstances by which each birth father requested and/or was denied parental leave requires individual inquiry; and 6) that Defendant could argue a good faith defense as to Plaintiff's liquidated damages defense. Plaintiff and his counsel, who are experienced class action employment lawyers, understand the resolution of these liability issues, the outcome of a trial, and a likely appeal are inherently uncertain in the outcome and duration.

In contrast to these and other risks, the Settlement's injunctive and monetary relief remedy the unfairness at the heart of the case, ensuring that Defendant continues to maintain a gender-neutral parental leave policy and implements it fairly, and compensating employees allegedly harmed by Defendant's prior parental leave policy. In light of the strengths and weaknesses here, the Settlement achieves excellent benefits for Potential Class Members.

### C. Further Litigation Would Be Lengthy, Complex, and Costly

By reaching a favorable settlement prior to dispositive motions, class certification, or trial, Plaintiff seeks to avoid significant expense, risk, and delay, and instead ensure a recovery for the Potential Class Members. Courts recognize that class actions are "inherently complex" and that "[s]ettlement avoids the costs, delays, and multitude of other problems associated with them." *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 U.S. Dist. LEXIS 5964, at *6 (E.D. Mich. 2015); *see also Schaefer v. Tannian*, 1995 U.S. Dist. LEXIS 11816, at *28 (E.D. Mich. Apr. 17, 1995) ("The track record for large class action employment discrimination cases demonstrates that many years may be consumed by trials and appeals before the dust

finally settles."). This case is no exception, with numerous Potential Class Members pleading relatively novel sex discrimination claims under federal and state law. See Ackermann Decl. ¶ 23.

Further litigation would cause additional expense and delay. Plaintiff would potentially need to defeat an initial motion to dismiss. Extensive fact and expert discovery would be needed to establish liability, damages, and class certification. The Parties would likely cross-move for summary judgment, requiring extensive briefing and delaying the resolution of the merits. If the Court found that factual disputes bar summary judgment, a lengthy trial would occur. Any judgment would likely be appealed, further extending the litigation. This Settlement, on the other hand, provides significant relief to Potential Class Members in a prompt and efficient manner. Therefore, this factor weighs in favor of preliminary approval.

## D. <u>Maintaining the Class Through Trial Would Not Be Simple</u>

Obtaining class certification and maintaining it through trial would present real risks. The Court has not certified a class, and certification of Title VII sex discrimination actions can be difficult, even in more "typical" sex bias cases. *E.g., Davis v. Cintas Corp.*, 717 F.3d 476, 487-89 (6th Cir. 2013) (affirming denial of certification in a sex bias case for lack of commonality); *cf. Chen–Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 66-67, 84 (S.D.N.Y. 2018) (granting in part and denying in part certification in a sex discrimination case over 7 years after the complaint was filed, nearly 4 years after the certification motion, and multiple interlocutory appeals). Settlement eliminates the risk, expense, and delay that permeate that process.

**E.** **The Gross Settlement Amount and Net Settlement Amount Is Substantial**

The Parties have agreed to settle this case for a "Gross Settlement Amount" that is presently unknown prior to the Class Notice process, but will consist of: (a) a $6,000 Individual Settlement Payment to every Participating Class Members, plus the employer-side payroll taxes associated with the W-2 portion of each Individual Settlement Payment; (b) attorneys' fees equaling $2,000 per valid claim; (c) $5,000 for Class Counsel's out-of-pocket litigation costs; (d) $10,000 for a Class Representative enhancement award to Plaintiff; and (e) all actual claims administration costs. Ackermann Decl., ¶ 19; Settlement, ¶ 12.

Each Participating Class Member (i.e., all Potential Class Members who submit a timely and valid Claim Form along with Proof of Paternity) will receive an equal payment of $6,000. Settlement, ¶ 15. This is a significant recovery—and supports that the Settlement is fair to the unnamed class members—especially considering each Potential Class Members' possible recovery through this action consists of wages owed for six-weeks of unpaid parental leave time, meaning every Participating Class Member will be compensated at a rate of $1,000 per week for every week that could have been owed for paid parental leave time (which also assumes that each Participating Class Member would take the full six-weeks of paid parental leave time had it been available to them). Ackermann Decl., ¶ 20.

The requested Class Representative enhancement award (of $10,000) and the requested attorneys' fees on top of and in addition to the Individual Settlement Payment (amounting to $2,000 per valid claim, which constitutes an award of 1/3rd of the combined amount of each $6,000 Individual Settlement Payment) are fair and

reasonable. *See Hillson v. Kelly Servs.*, 2017 U.S. Dist. LEXIS 127717, at *8-14 (E.D. Mich. Aug. 11, 2017) (recognizing that the "percentage of recovery approach is a reasonable choice[,]" noting that other courts consider 25% of a common settlement fund the "benchmark" for attorneys' fees awards in percentage-of-recovery cases, that an empirical study found the average attorneys' fees award over all class action settlements in 2006 and 2007 was 27.4% of the common fund, and recognizing that "25% (or more) of the settlement fund [i]s a good starting point for what is reasonable"); *Dover v. Yanfeng United States Auto. Interior Sys. I LLC*, 2023 U.S. Dist. LEXIS 34034, at *13-16 (E.D. Mich. March 1, 2023) (granting final approval to class action settlement, including attorneys' fees of 33.33% of the common fund and $10,000 incentive awards to each of the three named plaintiffs in the action); *NILI 2011, LLC v. City of Warren*, 2018 U.S. Dist. LEXIS 181230, at *13 (E.D. Mich. Oct. 23, 2018) (granting final approval to class action settlement, including attorneys' fees of 37.5% of the common fund and $10,000 incentive awards to each of the named plaintiffs in the action); *Simpson v. Citizens Bank*, 2014 U.S. LEXIS 205466, at *17 (E.D. Mich. Jan. 31, 2014) ("Class Counsel's request for 33% of the common fund created by their efforts is well within the benchmark range and in line what is often awarded in this Circuit."); *Martin v. Trott Law, P.C.*, 2018 U.S. Dist. LEXIS 167531, at *20-29 (E.D. Mich. Sept. 28, 2018) (granting approval to attorneys' fee award of 33.33% of the settlement common fund); *In re F&M Distribs., Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090, at *21 (E.D. Mich. June 29, 1999) (granting approval to attorneys' fee award of 33.33% of the settlement common fund and incentive awards of $7,500 to each of the class representatives).

Class Counsel will file a motion for approval of attorneys' fees and litigation costs with their Final Approval Motion.

Moreover, the Settlement includes important non-monetary and injunctive relief—having removed gender as a condition of being allowed to take paid parental leave following the birth of a child as a material term of the Settlement—that curbs "the practices which were alleged to give rise to violations of Title VII"; "[t]his relief enhances the settlement by guaranteeing that all class members who continue to work at [Defendant] will benefit from the settlement." *Sweet v. Gen. Tire & Rubber Co.*, 1982 U.S. Dist. LEXIS 12371, at *14 (N.D. Ohio Mar. 17, 1982); *see* Settlement, ¶ 67. Numerous employees and their families, including members of the Class, will benefit from this prospective relief in the future. Ackermann Decl., ¶ 21.

Weighing the substantial benefits of the Settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

## F. The Discovery Completed Was Sufficient For The Parties to Resolve The Case Responsibly

During the course of the negotiation, the Parties exchanged sufficient information to resolve this case in a manner that is fair and responsible. In evaluating this factor, courts must consider whether "the parties have adequate information in order to evaluate [their] relative positions." *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702, at *10 (E.D. Mich. Dec. 12, 2013) (internal quotation marks and citations omitted). Moreover, courts "should take account not only of court-refereed discovery but also informal discovery in which parties engaged both

before and after litigation commenced." *Int'l Union v. Ford Motor Co.*, 2008 U.S. Dist. LEXIS 66899, at *74 (E.D. Mich. Aug. 29, 2008) (citations omitted); *accord Griffin*, 2013 U.S. Dist. LEXIS 173702 at *10 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the court have adequate information. . . .").

Here, the Parties undertook a range of relevant discovery that led to an informed negotiations and settlement. Plaintiff's counsel initially interviewed Plaintiff to investigate how his parental leave request was treated, his interactions with Defendant's human resources department, and other facts. Ackermann Decl., ¶ 16. Plaintiff also provided his counsel with a copy of the paid parental leave policy at issue in this action. *Id.* Before mediation, Defendant provided Plaintiff's counsel with a range of information on its parental leave policy and how it was applied, as well as informal discovery documents and information, including a spreadsheet from Defendant's leave administrator showing non-union employees who requested FMLA leave between 2019 – 2022 for reasons of pregnancy/childbirth and/or to bond with a new child; and a spreadsheet showing the list of non-union employees who added newborns as dependents to Defendant's group health plan between September 2019 – October 2022. *Id.* ¶ 17; Settlement, ¶ 26. Before mediation, Plaintiff's counsel conducted a thorough investigation into the facts of this litigation and diligently pursued an investigation of the Potential Class Members' claims against Defendant, including engaging in pre-mediation investigation, reviewing data and documents, and researching the applicable law, claims and potential defenses, class certification, potential relief, and the ascertainability of the Potential

Class Members. Ackermann Decl., ¶ 17; Settlement, ¶ 28. Plaintiff's counsel drafted and exchanged a detailed mediation brief to inform Defendant of the key facts and legal issues, and the Parties engaged in extensive negotiations regarding possible resolution, including an all-day, private mediation session with respected employment law mediator, Dina Jansenson, Esq., on January 27, 2023. Ackermann Decl., ¶ 17; Settlement, ¶ 27.

All of the aforementioned discovery and information, plus numerous phone calls and emails between counsel for the Parties prior to mediation, informed the mediation session and ultimately led to an informed Settlement. Ackermann Decl., ¶ 17. These circumstances show "both parties have been afforded an adequate opportunity to conduct sufficient discovery to be fully appraised of the legal and factual issues presented as well as the strengths and weaknesses of their positions," which supports preliminary settlement approval. *Carr v. Livingston Cnty. Bd. of Commissioners*, 2019 U.S. Dist. LEXIS 248773, at *7 (E.D. Mich. June 28, 2019) (discovery factor supported approval where investigation included an exchange of documents and data to clarify the strengths and weaknesses of the parties positions).

### G. Experienced Counsel Recommend Approval

The recommendation in this case by experienced and highly-regarded counsel for both Parties should guide the Court to grant preliminary approval. "Class counsel's judgment that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Griffin*, 2013 U.S. Dist. LEXIS at *14 (citing *Sheick*, 2010 U.S. Dist. LEXIS 77676 at *51)). Here, a group of experienced civil rights attorneys recommend this Settlement as an

excellent resolution for the Potential Class Members. Plaintiff's counsel have extensive experience litigating complex employment class actions. See Ackermann Decl., ¶¶ 4-13. In this case, counsel engaged in sufficient discovery and negotiations to make a well- informed settlement decision. *Id.* ¶¶ 16-18; *Sheick*, 2010 U.S. Dist. LEXIS 77676 at *37, 57 (deferring to counsel where parties engaged in "informed 'arm's length' negotiations"). Counsel negotiated at arm's-length with the aid of an experienced employment law mediator, Dina Jansenson, Esq. Ackermann Decl., ¶ 17; Settlement, ¶ 27; *Bowman v. Art Van Furniture, Inc.*, 2018 U.S. Dist. LEXIS 207674, at *11 (E.D. Mich. Dec. 10, 2018) ("[P]articipation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties . . . .") (citation omitted).

### H. <u>The Class Can Raise Objections As Part Of The Notice Process</u>

After the Class Notice and Claim Form is distributed by the Claims Administrator to all males who were employed by Defendant in a non-union position during the Class Period by first-class mail and by email (see Settlement, ¶¶ 43-44), and the Potential Class Members have had the opportunity to be heard, the Court can more fully analyze any objections submitted by Proposed Class Members. The Named Plaintiff fully supports the Settlement. Ackermann Decl., ¶ 22. Moreover, the injunctive relief changes already agreed to by Defendant, which includes a modification of its paid parental leave policy to remove gender as a condition of being allowed to take paid parental leave following the birth of a child, should fully resolve the problematic aspects of Defendant's policy and how it was implemented.

The Individual Settlement Amounts in this case are also substantial: as stated in the Notice (Settlement, Ex. A), each Participating Class Member will receive an equal payment of $6,000. Settlement, ¶ 13. That individual amount is significant, and more than satisfactory in light of the uncertainty involved in receiving an award should the litigation proceed. Moreover, many birth fathers who were deterred from seeking paid parental leave may not be aware that their rights were potentially violated at all. Plaintiff and Plaintiff's counsel are confident the proposed Settlement directly addresses their concerns with Defendant's prior paid parental leave policy and that the Class will respond favorably. Ackermann Decl., ¶ 22. Finally, the Class Notice and Claim Form provides all males who were employed by Defendant in a non-union position during the Class Period with notice of their right to opt out, object, or appear at the final approval hearing. *Id.* ¶ 49; Settlement, Ex. A thereto. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (a class notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

## I. **Approval Is In The Public Interest**

The public interest supports approval. *See Robinson*, 566 F.3d at 648 ("[I]t is . . . well- established that '[p]ublic policy strongly favors settlement of disputes without litigation.'") (quoting *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 469 (6th Cir. 2007)). In addition to fairly compensating Participating Class Members, the injunctive relief ensures that all of Defendant's non-union employees can continue to take gender-neutral paid parental leave if they desire to do so. These

benefits help all employees and mitigate longstanding gender stereotypes that the Supreme Court and Congress have condemned. *See Hibbs*, 538 U.S. at 729- 35. The Settlement also conserves judicial resources by preventing what would surely be a lengthy and protracted litigation. *See Strano v. Kiplinger Wash. Editors, Inc.*, 2023 U.S. Dist. LEXIS 2877, at *18 (E.D. Mich. Jan. 6, 2023) (noting that the settlement of complex litigation and class action suits "conserves judicial resources[,]" which is a benefit of settlements).

## VI. PROVISIONAL CERTIFICATION OF A CLASS IS APPROPRIATE

Plaintiff requests that the Court conditionally certify the Class under Rule 23 and appoint Class Counsel to effectuate the Settlement, as courts ordinarily do when granting preliminary approval. *See, e.g., Strano*, 2023 U.S. Dist. LEXIS 2877 at *1, 10-11 (certifying a class for settlement purposes and appointing class counsel).

Under Rule 23(a), a class action may be maintained if all four requirements of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Fed. R. Civ. P. 23(a)-(b). Here, the proposed Class meets all of the class certification requirements, and Defendants consents to the certification motion for settlement purposes only. See Settlement, ¶ 89; *Strano*, 2023 U.S. Dist. LEXIS 2877 at *21 (certifying the class for settlement purposes only).

### A. Numerosity

The proposed Class satisfies numerosity. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As this Court has recognized, "[a]lthough there is no magic number that determines when joinder of all members would be impracticable, '[w]hen class size

reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone.'" *Snow v. Atofina Chems., Inc.*, 2003 U.S. Dist. LEXIS 27295, at *11 (E.D. Mich. Mar. 31, 2003) (recognizing that "class sizes that are relatively small have been held to suffice[,]" that "circuit precedent has recognized class certification in classes with as few as eighteen members," and that "a class of as few as twenty-five to thirty members raises a presumption that joinder would be impracticable.") (citations omitted).

Here, while the exact size of the Class is presently unknown prior to the Class Notice process, Defendant has represented that as of date the Parties executed the Settlement, there were 492 current non-union employees working for Defendant, and Defendant estimated that the Class Notice will be distributed to approximately 800 males who may qualify as Potential Class Members. Settlement, ¶ 5; Ackermann Decl., ¶ 23. Further, in advance of mediation and as part of informal discovery, Plaintiff's counsel reviewed data showing at least 22 non-union male employees of Defendant were allegedly denied paid baby bonding time following the birth of their child within the Class Period. Ackermann Decl., ¶ 23. Finally, Defendant has agreed that class certification is appropriate for purposes of this Settlement only. Settlement, ¶ 89. Accordingly, the numerosity requirement is satisfied in this case.

## B. **Commonality**

The proposed Class also satisfies the commonality requirement, which requires that there be at least one common factual or legal question. Fed. R. Civ. P. 23(a)(2). Commonality is met where the class members' claims "'depend upon a common contention . . . that it is capable of classwide resolution.'" *In re Whirlpool*

*Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). As the Supreme Court explained, commonality is clearly satisfied where, as here, employees challenge a specific, centralized employment policy and a plaintiff seeks to represent all employees who were allegedly prejudiced by that policy. *Dukes*, 564 U.S. at 353; *see, e.g., Potter v. Blue Cross Blue Shield of Mich.*, 2013 WL 12182603, at *4 (E.D. Mich. Mar. 4, 2013) (commonality met where class members were all denied insurance coverage "solely by reference to its medical policy statement").

Here, all the central factual and legal issues are common to all Potential Class Members and capable of a class-wide resolution. All Potential Class Members (i.e., non-union birth fathers) claim that they were denied paid baby bonding parental leave under Defendant's uniform and nationwide policy, which provided six-weeks of paid baby bonding time to non-union birth mothers but not non-union birth fathers. This policy was therefore a sex-based classification and premised on impermissible gender stereotyping. All Potential Class Members also suffered the same type of injury of being denied or deterred from seeking paid baby bonding parental leave. The common legal issues in the case require no individualized inquiry.

## C. Typicality

Plaintiff's claims are also typical of those of the Potential Class Members. Although Rule 23(a)(3) requires the named plaintiff's claims to be typical of the class members' claims, typicality does not require the claims to be factually identical. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976).

Typicality is satisfied where the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quoting 1 Newberg on Class Actions § 3:13 (3d ed. 1992)). Typicality is easily satisfied here. Plaintiff's claims arise from the same factual and legal circumstances that form the basis of the Potential Class Members' claims. Defendant applied the same paid parental leave policy to Plaintiff and the Potential Class Members. Their claims all rely on the same legal theory that Defendant's parental leave policy constitutes sex discrimination, and they all suffered the same injury of being denied paid parental leave.

### D. <u>Adequacy</u>

Plaintiff is also an adequate class representative, with qualified counsel. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this standard: "'1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citation omitted). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Id.* Here, Plaintiff does not have interests that conflict with the Potential Class Members' interests for the same reasons he satisfies typicality, and he has selected counsel who have zealously and competently represented the Class's interests and

have extensive experience litigating complex employment and civil rights class actions, including sex discrimination cases. *See* Ackermann Decl., ¶¶ 3-13; Johnson Decl., ¶ 5; Section VI. The adequacy requirement is therefore satisfied.

### E. <u>Certification Is Proper Under Rule 23(b)(2)</u>

The Court should certify the proposed Class under Rule 23(b)(2) because "[a] class action may be maintained under Rule 23(b)(2) if 'the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .'" *Sheick v. Auto. Component Carrier, LLC*, 2010 U.S. Dist. LEXIS 77676, at *9 (E.D. Mich. Aug. 2, 2010) (citing *Senter*, 532 F.2d at 522 n.23). The Rule 23(b)(2) requirements are met when "'the common claim is susceptible to a single proof and subject to a single injunctive remedy." *Id. See also Dukes*, 564 U.S. 338 at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.").

Here, this action arose because Defendant acted on grounds generally applicable to all Proposed Class Members by maintaining a paid parental leave policy that discriminated against all Proposed Class Members on the basis of sex in the same manner. Moreover, under and as a material term of the proposed Settlement, Defendant has agreed to take affirmative action affecting all Proposed Class Members, *e.g.,* modifying its paid parental leave policy to remove gender as a condition of being allowed to take paid parental leave following the birth of a child.

Settlement, ¶ 67. All of the agreed-upon terms of the proposed Settlement will also be generally applicable to the Class, and each individual Participating Class Member will be entitled to the same injunctive relief. *See M.R. v. Lyon*, 2018 U.S. Dist. LEXIS 148911, at *9-10 (E.D. Mich. Aug. 31, 2018) (granting final approval to a class settlement under Rule 23(b)(2) where the plaintiff sought to enter an agreement that would invalidate the defendant's allegedly illegal prior-authorization criteria for Hepatitis C treatment policy, which the Court determined would "benefit all class members," and which did "not ask[] the Court to make individual determinations regarding the putative class members' medical needs.").

### F. Certification Is Alternatively Proper Under Rule 23(b)(3)

Alternatively, the Court should certify the proposed Class under Rule 23(b)(3), because "[1] questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1. Common Questions Predominate

Common questions predominate in this case. "The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). When determining whether common issues "predominate" over "questions affecting only individual members," (Fed. R. Civ. P. 23(b)(3)), "[a]n individual question is one where 'members of a proposed class will need to present evidence that varies from

member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc*., 136 S. Ct. at 1045 (quoting 2 William Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses . . . ." *Id.* (citation and internal quotations omitted); *accord Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 415 (6th Cir. 2018) ("*Tyson* instructs that certification may remain 'proper' even if 'important matters' such as actual injury, causation, and damages will have to be tried separately." (citing *Tyson*, 136 S. Ct. at 1045)).

Here, the central factual and legal question—whether Defendant's paid parental leave policy constituted an unlawful sex-based classification and stereotyping by allowing paid baby bonding parental leave for non-union birth mothers, but not for non-union birth fathers—is common and can be proven with common evidence and legal arguments. Thus, this common issue predominates over any possible individual variations that may exist within the Class, for example, with respect to damages.

## 2. **A Class Action is Superior to Individual Actions**

Rule 23(b)(3) also requires that "a class action is the superior method for fair and efficient adjudication." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich*., 654 F.3d 618, 630 (6th Cir. 2011). Rule 23(b)(3) sets forth a non-exclusive

list of factors relevant to superiority, including the class members' interests in individually controlling separate actions; whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the claims in the particular forum; and manageability of a class action. Fed. R. Civ. P. 23(b)(3). The Supreme Court, however, has held that manageability need not be considered in certifying a class for settlement purposes. *Amchem Prods.*, 521 U.S. at 620.

The class action device is superior in this case as "the cost of [individual] litigation would dwarf any potential recovery," and Plaintiff is not aware of any individual suits alleging the same violations. *In re Whirlpool Litig.*, 722 F.3d at 861. Resolving the same claims of numerous other employees of Defendant in the same class action will also achieve economies of scale, conserve judicial resources, and avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims. See *In re Inter-Op Litig.*, 204 F.R.D. at 348.

## VII.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g) governs the appointment of class counsel and sets forth four criteria to evaluate the adequacy of counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Plaintiff's counsel meet these criteria. They have done substantial work

identifying, investigating, prosecuting, and settling the class claims here. Ackermann Decl., ¶¶ 16-18. They have substantial experience prosecuting and settling employment class and individual actions, including sex discrimination cases. *Id.* ¶¶ 4-13. Thus, courts have repeatedly appointed Plaintiff's Counsel to be class counsel in employment and civil rights class actions. *Id.*

## VIII. THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

The Court should approve the proposed Notice (Settlement, Ex. A). Rule 23 requires the notice process to be "the best notice that is practicable under the circumstances, including notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The proposed Notice satisfies due process and Rule 23, as it describes clearly and in detail the nature of the action, the class definitions and claims, the Settlement's relief, how Potential Class Members can file Claim Forms to receive a $6,000 Individual Settlement Payment, how attorneys' fees will be awarded, that a Potential Class Member may appear and object to the Settlement or request to be excluded, how and when to object or opt out, and that the judgment will bind Potential Class Members who do not opt out. See Fed. R. Civ. P. 23(c)(2)(B), (e)(1). Under the Settlement, within 30 days of preliminary approval of the Settlement, the Claims Administrator will mail and email the Class Notice and Claim Form to the last known address and email address of all males who were employed by Defendant in a non-union position during the Class Period and take further steps to locate Potential Class Members whose notices are returned as undeliverable. Settlement, ¶¶ 43-46. The process for submitting

Claim Forms is also reasonable, as it gives Potential Class Members 60 days from the mailing of the Class Notice to complete and submit Claim Forms with Proof of Paternity, Potential Class Members who submit Claim Forms with insufficient information—including insufficient Proof of Paternity—will receive outreach by the Claims Administrator to cure any insufficiencies and/or submit complete information, and Potential Class Members who submit valid and timely Claim Forms will receive payments within 30 days of the Effective Date. *Id.* ¶¶ 3, 19, 37-38, 42, 53-54.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and enter the Proposed Order.


Dated: October 4, 2023

/s/ Matthew J. Clark
Matthew J. Clark (P76690)
Gregory, Moore, Brooks & Clark, P.C.
28 W. Adams Ave., Suite 300
Detroit, MI 48226
(313) 964-5600
matt@unionlaw.net

Craig J. Ackermann, Esq.
Brian W. Denlinger, Esq.
ACKERMANN & TILAJEF, P.C.
315 S. Beverly Drive, Suite 504
Beverly Hills, CA 90212
Telephone: (310) 277-0614
E-mail: cja@ackermanntilajef.com
          bd@ackermanntilajef.com
*Attorneys for Plaintiff*