## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

NICHOLAS JOHNSON,

Plaintiff,

v.                                          Case No. 2:23-cv-10719-BAF-CI

GERDAU MACSTEEL, INC.,                      HON. Bernard J. Friedman

Defendant.

_____

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
_____

For the reasons set forth in the Brief in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, and in the Declarations of Craig J. Ackermann and William Argueta, Plaintiff respectfully requests and Defendant does not oppose that the Court enter an Order:

(1) finally certifying the Settlement Class, for settlement purposes only, as defined in the Settlement Agreement;

(2) granting final approval of the Settlement Agreement; and

(3) granting any other relief that the Court deems just and proper.

Plaintiff submits a Proposed Order, attached hereto, for the Court's convenience.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

NICHOLAS JOHNSON,

Plaintiff,

v.                                   Case No. 2:23-cv-10719-BAF-CI

GERDAU MACSTEEL, INC.,               HON. Bernard J. Friedman

Defendant.

---

## BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................2

   A.  Plaintiff Nicholas Johnson and Defendant's Parental Leave Policy ........2

   B.  Plaintiff's EEOC Charge ...............................................3

   C.  Settlement Negotiations, the Modification to Defendant's Parental
Leave Policy, and this Litigation ...........................................3

   D.  The Settlement Class ...................................................5

   E.  The Relief and Releases ................................................6

   F.  The Notice Process .....................................................7

   G.  Payments to Participating Class Members ...............................8

   H.  Notice Under the Class Action Fairness Act ............................9

III. ARGUMENT ...................................................................11

   A.  There is No Risk of Fraud or Collusion ................................11

   B.  The Complexity, Expense, and Likely Duration of the Litigation
Support Final Approval ...................................................12

   C.  The Amount of Discovery Supports Final Approval ....................14

   D.  The Settlement Properly Reflects the Likelihood of Success on the
Merits ...................................................................15

   E.  The Support of Class Counsel and Plaintiff Favors Final Approval......19

   F.  The Reaction of the Class Members is Positive .........................20

   G.  The Public Interest Favors Settlement .................................21

   H.  The Best Practicable Notice of the Settlement has been Provided to the
Potential Class Members .................................................22

   I.  Final Certification of the Settlement Class is Appropriate ...................23

IV.  CONCLUSION ................................................................23

## CONCISE STATEMENT OF ISSUES PRESENTED

**Question**: Should the Court grant final approval of the Settlement Agreement and finally certify the Settlement Class?

**Answer**: Yes.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

Fed. R. Civ. P. 23;

*Doe v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019);

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008);

*Schaefer v. Tannian*, 1995 U.S Dist. LEXIS 11816 (E.D. Mich. Apr. 17, 1995);
and

*Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec.
12, 2013).

## I.    INTRODUCTION

Plaintiff Nicholas Johnson ("Plaintiff"), on behalf of himself and the Settlement Class,[1] respectfully requests that the Court grant final approval of the Settlement Agreement ("Settlement"), ECF No. 7-4, that he has reached with Defendant Gerdau Macsteel, Inc. ("Defendant") (together with Plaintiff, the "Parties") regarding his sex discrimination claims under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-2, *et seq.*) ("Title VII"); the Federal Equal Pay Act (29 U.S.C. § 206(d) and 215(a)(2)) ("EPA"); and Michigan's Elliot-Larsen Civil Rights Act (MCL 37.2202(1)) ("ELCRA") and Workforce Opportunity Wage Act (MCL 408.423(1)) ("WOWA").

Under the Settlement, which the Court preliminarily approved on October 11, 2023, ECF Nos. 10-12, Defendant has agreed to both injunctive relief and monetary relief to address Plaintiff's concerns with Defendant's paid parental leave policy and to compensate non-union birth fathers who were adversely affected by Defendant's paid parental leave policy. Through the Notice process, there are 23 "Participating Class Members," i.e., there are 23 "Potential Class Members who submit[ted] timely and valid Claim Forms along with Proof of Paternity,[2] and who [did] not timely and

---

[1] Unless otherwise indicated, all exhibits are attached to the Declaration of Craig J. Ackermann Declaration in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plaintiff's Unopposed Motion for Approval of Attorneys' Fees, Reimbursement of Litigation Expenses, and Enhancement Award ("Ackermann FAM Decl."), and all capitalized terms herein have the definitions set forth in the Settlement Agreement (ECF No. 7-4).

[2] "Proof of Paternity" means "proof that a Potential Class Member had a baby during the Class Period. Proof of paternity may be provided through a child's birth certificate, the addition of a newborn to their Gerdau-provided health insurance plan

properly opted-out of the Settlement." ECF No. 7-4, ¶ 17. Accordingly, each of the 23 Participating Class Members shall receive a $6,000 Individual Settlement Payment, for a Net Settlement Amount of $138,000, plus employer-side payroll taxes associated with the W-2 portion of each Individual Settlement Payment. *Id.* ¶¶ 12-13, 15. Further, the Settlement also provides—on top of and in addition to the Individual Settlement Payments—attorneys' fees equaling $46,000 (*i.e.*, $2,000 per valid claim); $5,000 for Class Counsel's out-of-pocket litigation costs; $10,000 for a Class Representative enhancement award to Plaintiff; and all actual claims administration costs. *Id.* ¶ 12.

The Settlement is fair, adequate, and reasonable, given the excellent recovery for the Settlement Class and the expense, complexity, and likely duration of further litigation. Accordingly, the Court should grant final approval of the Settlement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. <u>Plaintiff Nicholas Johnson and Defendant's Parental Leave Policy</u>

Plaintiff worked for Defendant at its Monroe, Michigan steel mill as a non-union R&D Technical Specialist between 2021 and August 1, 2022. ECF No. 1 ("Compl."), ¶ 13. Plaintiff's wife gave birth to their child on November 6, 2021. *Id.* ¶ 14. Upon the birth of Plaintiff's child, Defendant provided Plaintiff with 30 days of unpaid paternity leave after Plaintiff requested parental leave, and Plaintiff in fact took 30 days of unpaid paternity leave. *Id.*

At the time of Plaintiff's child's birth, Defendant's parental leave policy—

---

or the health insurance plan of their spouse during the Class Period, or through other reasonable evidence…." ECF No. 7-4, ¶ 19.

which only applied to non-union positions—provided a much more generous 12-14 weeks of paid maternity leave for "the employee who gave birth," including six weeks of fully paid maternity leave "for such things as baby bonding and/or dealing with baby medical matters." *Id.* ¶ 15. At the time Plaintiff was offered and took 30 days of unpaid paternity leave, he understood that if he was a birth mother, he would be eligible to receive 6-weeks of paid parental leave "for such things as baby bonding and/or dealing with baby medical matters" through Defendant's parental leave policy, but that as a birth father, he was excluded from receiving any paid parental leave. *Id.*

### B. Plaintiff's EEOC Charge

On August 30, 2022, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights against Defendant for individual and class claims of discrimination based on sex and/or gender, challenging Defendant's policy and practice of denying paid parental leave to birth fathers, on behalf of himself and a class of similarly situated male employees who had been denied paid parental leave by Defendant. See ECF No. 7-3 ("EEOC Charge").

### C. Settlement Negotiations, the Modification to Defendant's Parental Leave Policy, and this Litigation

Subsequent to Plaintiff submitting his EEOC Charge, the Parties, through their attorneys, engaged in informal settlement discussions regarding the matter, including an exchange of discovery documents and information and an all-day, private mediation session. ECF No. 7-4, ¶¶ 26-27.

Specifically, from October 2022 through January 2023, the Parties engaged in settlement discussions and informal discovery to learn about Defendant's parental leave policy and how Potential Class Members were impacted by the policy. ECF No. 7-2 (Ackermann Decl.), ¶ 16. In early-January 2023, Defendant provided Plaintiff with informal discovery documents and information, including a spreadsheet from Defendant's leave administrator showing non-union employees who requested FMLA leave between 2019–2022 for reasons of pregnancy/childbirth and/or to bond with a new child; and a spreadsheet showing the list of non-union employees who added newborns as dependents to Defendant's group health plan between September 2019 – October 2022. *Id.* ¶ 17. Thereafter, the Parties engaged in extensive negotiations regarding possible resolution, which included an all-day, private mediation session with respected employment law mediator Dina Jansenson, Esq. *Id.* During the mediation process, the Parties exchanged detailed mediation statements on the claims, defenses, and potential damages. *Id.* On January 27, 2023, through mediation, the Parties reached agreement regarding the general terms of the Settlement, which were memorialized in a Memorandum of Understanding. *Id.*

Between January 2023 and March 2023, the Parties exchanged long-form settlement agreement drafts, developed a claims process, a Claim Form, and a proposed Notice of Class Action Settlement. *Id.* ¶ 18. The Parties ultimately negotiated a long-form Settlement Agreement (i.e., the Settlement), which was fully executed by the Parties on March 21, 2023. *Id.* During this process, all negotiations were conducted on an arm's-length basis. *Id.* Moreover, as a material term of the Parties' Settlement, and following the receipt of Plaintiff's EEOC Charge,

Defendant modified the maternity leave policy at issue in this dispute (i.e., its policy allowing paid baby bonding parental leave time to female employees, but not to male employees) to remove gender as a condition of being allowed to take paid parental leave following the birth of a child. *Id.*

On March 28, 2023, Plaintiff filed this putative class action alleging that Defendant violated Title VII, the EPA, the ELCRA, and the WOWA. Compl. ¶ 4; ECF No. 7-4, ¶ 24. On October 11, 2023, the Court: (1) preliminarily approved the Settlement; (2) conditionally certified the Settlement Class for settlement purposes only; (3) appointed Plaintiff's counsel—Craig Ackermann and Brian W. Denlinger of Ackermann & Tilajef, P.C. and Matthew Clark of Gregory, Moore, Brooks & Clark, P.C.—as Class Counsel for the Settlement Class; (4) appointed Plaintiff to serve as the Class Representative; and (5) approved the form and manner of distributing the Notice and Claim Form. ECF No. 10. The Court subsequently amended its Preliminary Approval Order to continue the Final Approval Hearing date to February 20, 2024 (ECF No. 11, ¶ 11), and extended the time for Class Counsel to file this Motion and Plaintiff's motion for approval of attorneys' fees and litigation expenses to January 29, 2024. ECF No. 12.

**D. <u>The Settlement Class</u>**

The Settlement Class that the Court conditionally certified for settlement purposes if defined as follows:

> All males who had a baby through natural birth (i.e., not adoption or placement through foster care) at any time during the Class Period (from August 30, 2019 through December 31, 2022) while they were employed by Gerdau Macsteel, Inc. in a non-union position

(collectively, the "Potential Class Members").

ECF No. 11, ¶ 3. Through its personnel records, Defendant identified 470 Potential Class Members, each of whom received Notice of the Settlement. Declaration of William Argueta on Behalf of CPT Group, Inc. Regarding Notice and Claims Administration ("Argueta Decl."), ¶ 5.

**E. The Relief and Releases**

The Settlement provides monetary relief to the Participating Class Members and injunctive relief in the form of a modification of Defendant's paid parental leave policy to remove gender as a condition of being allowed to take paid parental leave following the birth of a child. Under the Settlement, Defendant will continue to maintain the gender-neutral paid parental leave policy that it implemented on January 1, 2023; the terms of the Settlement provide that, "[a]s a material term of this Agreement, Defendant modified the maternity leave policy at issue in this dispute (i.e., its policy allowing baby bonding time to female employees, but not to male employees) to remove gender as a condition of being allowed to take paid parental leave following the birth of a child." ECF No. 7-4, ¶ 67.

Subject to Court approval, the Settlement also establishes a proposed Gross Settlement Amount of approximately $209,000, excluding employer-side payroll taxes, which covers (a) all $6,000 Individual Settlement Payments to be paid to the 23 Participating Class Members ($138,000), plus the employer-side payroll taxes associated with the W-2 portion of each Individual Settlement Payment; (b) attorneys' fees equaling 1/3rd of each Participating Class Members' Individual Settlement Payment on top of and in addition to the Individual Settlement Payment

(i.e., $46,000);[3] (c) $5,000 for Class Counsel's out-of-pocket litigation costs; (d) $10,000 for a Class Representative enhancement award to Plaintiff; and (e) all actual claims administration costs, which totals $10,000. Argueta Decl., ¶¶ 13-16; ECF No. 7-4, ¶ 12.

To receive an Individual Settlement Payment, Participating Class Members must have submitted a valid Claim Form with Proof of Paternity by the Claims Deadline. ECF No. 7-4, ¶¶ 3, 20, 49-52; *see also* ECF No. 11, ¶ 8.

Potential Class Members who have not opted out of the Settlement Class will release claims under federal and state law against Defendant that were made or could have been made to challenge Defendant's paid parental leave policy or application of it as sex discriminatory during the Class Period. ECF No. 7-4, ¶ 60.

**F. The Notice Process**

The Parties and the Settlement Administrator, CPT Group, Inc., have followed the Court-approved Notice and Claim Form plan set forth in the Settlement and the Preliminary Approval Order. *See* Argueta Decl., ¶¶ 2-12; ECF No. 11, ¶¶ 7-8.

The Settlement Administrator followed best practices to ensure that the Notice reached all Potential Class Members. On November 10, 2023, CPT Group sent the Court-approved Notice and Claim Form to the 470 Potential Class Members by First Class U.S. Mail. Argueta Decl., ¶ 7. Of the 16 mailed Notices returned as undeliverable, the Settlement Administrator performed address searches and located

---

[3] Together with Plaintiff's filing of this Motion, Class Counsel are filing a motion for approval of attorneys' fees and costs and for an enhancement award for Plaintiff in recognition of his excellent service to the Settlement Class.

updated address information for 12 Class Members. *Id.* ¶¶ 8-9. The Settlement Administrator re-mailed Notices to those individuals, as well as to 2 individuals whose forwarding addresses were provided by U.S. Postal Service. *Id*. Ultimately, only 4 Notices were returned as undeliverable where no new address could be located. *Id.* ¶ 9.

To date, the Settlement Administrator has received a total of 23 valid Claim Forms with Proof of Paternity. *Id.* ¶ 13. No Potential Class Members objected to the settlement. *Id.* ¶ 11. Only 3 Potential Class Members—Eric Douglas Fink, Derek DiMartino, and Andrew P. Bayer—opted out of the settlement. *Id.* ¶ 10. Pursuant to the Settlement, those three Potential Class Members who opted-out of the Settlement will not be entitled to receive an Individual Settlement Payment and will not be bound by the Settlement or have any right to object, appeal, or comment thereon. ECF No. 7-4, ¶ 50.

## G. <u>Payments to Participating Class Members</u>

As discussed above, the Settlement Administrator has determined that there are 23 Participating Class Members, i.e., 23 Potential Class Members submitted timely and valid Claim Forms with Proof of Paternity. Argueta Decl., ¶ 13; ECF No. 7-4, ¶ 17.

Should the Court enter an order finally approving the Settlement, the Settlement Administrator will distribute to each Participating Class Member a $6,000 Individual Settlement Payment. Argueta Decl., ¶ 14. $3,000 of each Individual Settlement Payment is reportable as W-2 wages, less applicable employee-side tax withholdings and deductions for which an IRS Form W-2 will be

issued to each Participating Class Member (Defendant shall pay its employer-side payroll taxes associated with the W-2 portion of each Individual Settlement Agreement); and $3,000 reported as 1099 income for which an IRS Form 1099 will be issued to each Participating Class Member. *Id.*

The Settlement Administrator will distribute the Individual Settlement Payments within 30 calendar days after the Effective Date. *Id.* ¶ 42. Participating Class Members will have 180-days to cash the checks that they receive, and if any Participating Class Members do not cash their checks within the 180-day Check Cashing Period, any funds associated with such uncashed checks shall be distributed pursuant to a *cy pres* to The Fatherhood Project, subject to approval by the Court. *Id.* ¶¶ 1, 37[4], 59.

## H. Notice Under the Class Action Fairness Act

On January 18, 2024, Defendant satisfied its obligation to serve the appropriate settlement notice documents on the relevant federal and state attorneys general to comply with the Class Action Fairness Act ("CAFA"). Ackermann FAM Decl. ¶ 7. The Parties have not received any comments from any state or federal official regarding the Settlement. *Id.* The Final Approval hearing, scheduled for February 20, 2024, will be held 33 days after the issuance of CAFA notices.

Accordingly, the Parties jointly propose that the Court hold the Final Approval Hearing on February 20, 2024 as scheduled, but—should the Court grant

---

[4] Paragraph 37 erroneously refers to the Check Cashing Period as 90 days; however, the parties agree this is a typographical error. The Check Cashing Period is 180 days as set forth in ¶¶ 1 and 59 the Settlement.

final approval of the Settlement—hold the Court's Order Granting Final Approval in abeyance until the ninety-day period after the issuance of the CAFA notices has expired, i.e., until April 18, 2024, to ensure compliance with CAFA's notice requirements pursuant to 28 U.S.C. § 1715(d). *See Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 973 (E.D. Cal. 2012) (listing cases finding that "late mailing of notices to state and federal officials under CAFA is not fatal to approval of settlements"); *Cavazos v. Salas Concrete Inc.*, 2022 U.S. Dist. LEXIS 74367, at *3 (E.D. Cal. Apr. 22, 2022) ("Although the court cannot grant final approval of the class and collective action settlement in this case until at least…ninety days from when defendant mailed notice to the appropriate state and federal officials…the court may nonetheless hold a final approval hearing before the ninety-day period under 28 U.S.C. § 1715(d) concludes."); *Wilcox v. Swapp*, 2020 U.S. Dist. LEXIS 80123, at *4-5 (E.D. Wash. Apr. 22, 2020) (finding that the court may hold a final approval hearing within ninety days of the defendants providing notice under § 1715(d) because "as long as the relevant government officials are allowed ninety days to object to the settlement, the notice requirement has served its purpose"); *Gatdula v. CRST Intern., Inc.*, 2015 U.S. Dist. LEXIS 193440, 2015 WL 12697656, at *1, 12 (C.D. Cal. Aug. 26, 2015) (noting that CAFA notice was only provided to the relevant government officials five days before the final approval hearing was conducted and holding the court's order granting motion for final approval of class action settlement in abeyance until ninety-day period expired).

///

## III.    ARGUMENT

The Court should grant final approval of the Settlement, as the factors here that courts consider when deciding whether to approve a class settlement weigh strongly in favor of approval. Courts in this circuit apply a "seven-factor test to assess whether or not a class action settlement is 'fair, reasonable, and adequate' under Federal Rule of Civil Procedure 23(e)." *Doe v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019). Those factors include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id.* at 894-95 (quoting *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). These factors all strongly support final approval in this case. Furthermore, to ensure that the Settlement may be approved and implemented, the Court should grant final certification of the class. *See Koenig v. USA Hockey, Inc.*, 2012 U.S. Dist. LEXIS 207799, at *16 (S.D. Ohio Jan. 10, 2012) ("The benefits of a settlement can be realized only through the final certification of a settlement class.").

### A. <u>There is No Risk of Fraud or Collusion</u>

Absent evidence to the contrary, courts "presume the absence of fraud or collusion in class action settlements." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 839 (E.D. Mich. 2008). The negotiation process in this case demonstrates that there was never a risk of fraud or collusion.

The Settlement is the result of the Parties' serious, informed, and detailed negotiations, and was reached through arm's-length negotiations, including an all-day, private mediation session with respected employment law mediator Dina Jansenson, Esq. ECF No. 7-2, ¶ 17. During the mediation process, the Parties exchanged detailed mediation statements on the claims, defenses, and potential damages. *Id.* Between January 2023 and March 2023, the Parties exchanged long-form settlement agreement drafts, developed a claims process, a Claim Form, and a proposed Notice of Class Action Settlement. *Id.* ¶ 18. The Parties ultimately negotiated a long-form Settlement Agreement (i.e., the Settlement), which was fully executed by the Parties on March 21, 2023. *Id.* During this process, all negotiations were conducted on an arm's-length basis. *Id. See also Bowman v. Art Van Furniture, Inc.*, 2018 U.S. Dist. LEXIS 207674, at *11 (E.D. Mich. Dec. 10, 2018) ("[P]articipation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties . . . .") (citation omitted).

Because counsel for all Parties are experienced in class and complex litigation and engaged in good-faith negotiations with an independent mediator, this factor weighs in favor of final approval. *See* ECF No. 7-2, ¶¶ 4-13.

**B. <u>The Complexity, Expense, and Likely Duration of the Litigation Support Final Approval</u>**

By reaching a favorable settlement at this stage of the litigation, Plaintiff has avoided significant expense, risk, and delay, and has ensured a significant recovery for the Settlement Class. Courts recognize that "[m]ost class actions are inherently

complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)); *see also Schaefer v. Tannian*, 1995 U.S Dist. LEXIS 11816, at *28-29 (E.D. Mich. Apr. 17, 1995) (acknowledging that when a "large class action employment discrimination case[]" consumes years of litigation, "[m]any of the tangible benefits accruing from any damage award would be lost and the usefulness of the awards to the individuals substantially diluted by the delay inherent in acquiring them"); *see, e.g.*, *Chen–Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 66-67, 84 (S.D.N.Y. 2018) (granting in part and denying in part class certification in a gender bias case over seven years after the initial complaint was filed, nearly four years after the plaintiffs moved for class certification, and after multiple interlocutory appeals to the Second Circuit).

This case is no exception. Further litigation would cause additional expense and delay, and Plaintiff would potentially need to defeat an initial motion to dismiss. Extensive fact and expert discovery would be needed to establish liability, damages, and class certification. The Parties would likely cross-move for summary judgment, requiring extensive briefing and delaying the resolution of the merits. If the Court found that factual disputes bar summary judgment, a lengthy trial would occur. Any judgment would likely be appealed, further extending the litigation. This Settlement, on the other hand, provides significant relief to Settlement Class in a prompt and efficient manner. Therefore, this factor weighs in favor of final approval.

///

**C.** <u>**The Amount of Discovery Supports Final Approval**</u>

The Parties settled the case in an informed manner after taking the discovery that they needed to evaluate liability and the potential damages in the case.

Plaintiff's counsel initially interviewed Plaintiff to investigate how his parental leave request was treated, his interactions with Defendant's human resources department, and other facts. ECF No. 7-2, ¶ 16. Plaintiff also provided his counsel with a copy of the paid parental leave policy at issue in this action. *Id.* Before mediation, Defendant provided Plaintiff's counsel with a range of information on its parental leave policy and how it was applied, as well as informal discovery documents and information, including a spreadsheet from Defendant's leave administrator showing non-union employees who requested FMLA leave between 2019 – 2022 for reasons of pregnancy/childbirth and/or to bond with a new child; and a spreadsheet showing the list of non-union employees who added newborns as dependents to Defendant's group health plan between September 2019 – October 2022. *Id.* ¶ 17; ECF No. 7-4, ¶ 26. Before mediation, Plaintiff's counsel conducted a thorough investigation into the facts of this litigation and diligently pursued an investigation of the Potential Class Members' claims against Defendant, including engaging in pre-mediation investigation, reviewing data and documents, and researching the applicable law, claims and potential defenses, class certification, potential relief, and the ascertainability of the Potential Class Members. ECF No. 7-2, ¶ 17; ECF No. 7-4, ¶ 28. Plaintiff's counsel drafted and exchanged a detailed mediation brief to inform Defendant of the key facts and legal issues, and the Parties engaged in extensive negotiations regarding possible resolution, including an all-

day, private mediation session with respected employment law mediator, Dina Jansenson, Esq., on January 27, 2023. ECF No. 7-2, ¶ 17; ECF No. 7-4, ¶ 27.

All of this discovery and information led to an informed negotiation which resulted in an informed Settlement that addresses Plaintiff's concerns about the parental leave policy and that compensates fathers who believe they were denied paid parental leave. ECF No. 7-2, ¶ 17. Accordingly, this factor supports final approval. *See Carr v. Livingston Cnty. Bd. of Commissioners*, 2019 U.S. Dist. LEXIS 248773, at *7 (E.D. Mich. June 28, 2019) (discovery factor supported approval where investigation included an exchange of documents and data to clarify the strengths and weaknesses of the parties positions); *Wright v. Premier Courier, Inc.*, 2018 U.S. Dist. LEXIS 140019, at *10 (S.D. Ohio Aug. 17, 2018) (parties were "afforded an adequate opportunity to conduct sufficient discovery to be fully appraised of the legal and factual issues presented as well as the strengths and weaknesses of their cases" where investigation included conferences, consideration of documents, and analysis of the viability of class treatment and potential class-wide damages); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 557 (S.D. Ohio 2000) ("Counsel's reliance upon informal discovery does not preclude approval of the proposed Settlement.").

**D. <u>The Settlement Properly Reflects the Likelihood of Success on the Merits</u>**

In assessing the reasonableness of a settlement, the likelihood of success on the merits is "the most important of the factors" and "provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011) (quoting *In re Gen.*

*Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Plaintiff and the Settlement Class, i.e., all of the Potential Class Members except for the three individuals who opted-out of the Settlement, have a high likelihood of success on the merits.

As explained in Plaintiff's Motion for Preliminary Approval (ECF No. 7, at 6-9), fringe benefits, including any period of paid or unpaid parental leave, are among the terms, conditions or privileges of employment that must be offered on a non-discriminatory basis. *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 279 n.10 (1987); *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 683 (1983). Employer policies may not distinguish between male and female employees based on "stereotypical notions about pregnancy and the abilities of pregnant workers," or based on gender stereotypes related to women's presumed role as caregivers. *Guerra*, 479 U.S. at 290. For these reasons, a disparity in the period of leave given to female and male employees must be limited to "the period of *actual physical disability* on account of pregnancy, childbirth, or related medical conditions." *Id.* (emphasis in original). By contrast, the Court has cautioned that statutes or policies that grant unequal caregiving leave between men and women are premised upon unlawful gender stereotypes that violate Title VII. *See id.*; *see also Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 736 (2003) ("Because employers continued to regard the family as the woman's domain, they often denied men similar accommodations or discouraged them from taking leave.").

Consistent with *Guerra* and *Hibbs*, courts have held that any leave (paid or unpaid) that is provided for the purpose of bonding with or caring for a newborn that

exceeds an amount necessary for a mother to recover from childbirth must be offered equally to men and women, and have invalidated policies that provide leave only to women in excess of that time.[5]

The same rule is found in the EEOC's guidance, which distinguishes between "leave related to any physical limitations imposed by pregnancy or childbirth . . . and leave for purposes of bonding with a child and/or providing care for a child." U.S. Equal Emp. Opportunity Comm'n, No. 915.003, *EEOC Enforcement Guidance: Pregnancy Discrimination and Related Issues*, § I.C.3 (2015), http://www.eeoc.gov/laws/guidance/pregnancy_guidance.cfm#IC3. The EEOC explains that "parental leave must be provided to similarly situated men and women on the same terms," such that if "an employer extends leave to new mothers beyond the period of recuperation from childbirth . . . it cannot lawfully fail to provide an equivalent amount of leave to new fathers for the same purpose." *Id.*[6]

Plaintiff has alleged that as a result of Defendant's practice of only allowing non-union birth mothers to receive six weeks of fully paid maternity leave "for such

---

[5] *See*, *e.g.*, *Knussman v. Maryland*, 272 F.3d 625, 635-36, 650 n.3 (4th Cir. 2001) (state police's policy and practice of refusing to provide FMLA leave to fathers violated equal protection, noting that "gender classifications that appear to rest on nothing more than conventional notions about the proper station in society for males and females have been declared invalid time and again by the Supreme Court"); *Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh*, 903 F.2d 243, 248 (3d Cir. 1990); *Chavkin v. Santaella*, 81 A.D.2d 153, 156-58 (N.Y. App. Div. 1981).

[6] *See also* U.S. Equal Emp. Opportunity Comm'n, No. 915.002, *Enforcement Guidance: Unlawful Disparate Treatment of Workers with Caregiving Responsibilities* (2007), http://www.eeoc.gov/policy/docs/caregiving.html ("[E]mployers should carefully distinguish between pregnancy-related leave and other forms of leave, ensuring that any leave specifically provided to women alone is limited to the period that women are incapacitated by pregnancy and childbirth.").

things as baby bonding and/or dealing with baby medical matters," non-union birth fathers who wanted to serve as primary caregivers received six fewer weeks of paid parental leave than non-union birth mothers (i.e., non-union birth fathers received zero weeks of paid parental leave), and that this differential in paid parental leave is unrelated to birth mothers' physical need to recover from childbirth. See Compl. ¶¶ 2-3, 15-18. Plaintiff asserts that this policy and practice constitutes a sex-based classification that treats male employees in a manner that "but for [their] sex" would be different, and rests upon impermissible sex-based stereotypes about men's role as breadwinners and women's role as caregivers, thus violating Title VII, the EPA, ELCRA, WOWA, and/or equivalent state antidiscrimination laws. *Id.* ¶¶ 4, 29, 32-50.

At the same time, given that Plaintiff and the Settlement Class faced significant risks on both liability and damages, the relief obtained in the Settlement is excellent. Were the case to proceed to trial, Defendant would likely argue that: 1) Plaintiff's class action may not meet numerosity or ascertainability requirements on a contested motion if we had a low claims rate among the males receiving Notice; 2) the purported injury is for the intangible loss of baby bonding time, which is not a wage claim and/or cannot be calculated individually; 3) Plaintiff could only obtain injunctive relief if he was a current employee at the time this action went to trial and through judgment, which he is not; 4) it has a waiver defense, since many Potential Class Members are hourly-paid, rather than salaried employees, and they therefore may not have taken all or any of the six weeks of baby bonding parental leave time since hourly-paid employees make a significant amount of their compensation

through overtime pay (i.e., many hourly-paid employees would have chosen to work and earn overtime pay rather than take parental leave); 5) that Plaintiff, as a salaried employee, was among the highest paid birth fathers employed by Defendant, meaning other Potential Class Members would not be entitled to the same amount of potential damages and/or that the circumstances by which each birth father requested and/or was denied parental leave requires individual inquiry; and 6) that Defendant could argue a good faith defense as to Plaintiff's liquidated damages defense. CJA FAM Decl., ¶ 8.

The Settlement achieves excellent benefits for the Settlement Class in light of these risks. First, each Participating Class Member will receive a $6,000 Individual Settlement Payment, compensating employees allegedly harmed by Defendant's prior parental leave policy. Argueta Decl., ¶ 14. Second, the Settlement provides meaningful injunctive relief to remedy the unfairness at the heart of the case, ensuring that Defendant continues to maintain a gender-neutral parental leave policy and implements it fairly, and this prospective relief will benefit numerous employees and their families, including members of the Class, in the future. ECF No. 7-4, ¶ 67; ECF No. 7-2, ¶ 21.

Weighing these benefits against the uncertainty associated with proceeding in the litigation and the potential to recover nothing, this factor weighs in favor of final approval.

### E.  The Support of Class Counsel and Plaintiff Favors Final Approval

Class Counsel's recommendation that the Court approve this Settlement supports final approval. *See Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist.

LEXIS 173702, at *10 (E.D. Mich. Dec. 12, 2013) ("Class counsel's judgment that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'") (citation omitted).

They make this recommendation only after engaging in ample discovery and negotiations sufficient to allow them to make a well-informed decision to enter into the Settlement. *See* Section III.C, *supra*; *Levell*, 191 F.R.D. at 557 (affording counsel deference where the parties had engaged in "informal discovery and extensive negotiations"). Class Counsel here, moreover, are experienced employment and civil rights lawyers who have extensive experience litigating complex employment class actions. ECF No. 7-2, ¶¶ 4-13.

Class Representative Nicholas Johnson, who has been actively involved in the settlement process, also recommends that the Court approve the settlement. *Id.* ¶ 22; ECF No. 7-1 (Decl. of Johnson), ¶ 6. This factor therefore weighs in favor of approval.

### F.  **The Reaction of the Class Members is Positive**

The reaction of the Settlement Class has been positive and strongly supports the conclusion that the Settlement is fair, adequate, and reasonable. 23 Potential Class Members submitted timely and valid Claim Forms with Proof of Paternity (i.e., the "Participating Class Members"). Argueta Decl., ¶ 13. None of the 470 Potential Class Members who received Notice of the Settlement filed an objection, and only 3 Potential Class Members opted out of the Settlement. *Id.* ¶¶ 10-11.

This reaction of the Settlement Class is far more favorable than other cases where there were numerous opt outs or objections and yet courts still found that the

reaction of the class favored final approval or approved the settlements. *See, e.g.*, *Does 1-2 v. Déjà Vu Servs.*, 925 F.3d 886, 899 (6th Cir. 2019) (court "did not abuse its discretion in finding that the level support and participation from the class supported approval of the Settlement" where 66 class members opted out and 6 objected); *Gen. Motors Corp.*, 497 F.3d at 622-23, 637 (affirming the final approval of two settlements over the objections of 1,250 class members to one settlement and 800 class members to another); *Thomas v. Albright*, 139 F.3d 227, 232 (D.C. Cir. 1998) (collecting cases from the Second, Fourth, Seventh and Fifth Circuits in which settlements were approved despite significant portions of the class members objecting).

### G. <u>The Public Interest Favors Settlement</u>

The public interest in settling a class action weighs in favor of approval. *See Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) ("[I]t is . . . well-established that '[p]ublic policy strongly favors settlement of disputes without litigation . . . .'") (quoting *Ford Motor Co. v. Mustangs Unlimited., Inc.*, 487 F.3d 465, 469 (6th Cir. 2007)). This is particularly so in an employment discrimination case such as this. *Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983) ("Voluntary settlement is the preferred method of eliminating employment discrimination.").

In addition to fairly compensating the Settlement Class, the Settlement's injunctive relief ensures that current and future employees of Defendant can continue to take gender-neutral parental leave if they desire to do so. These benefits will help all employees and will mitigate longstanding gender stereotypes that the

Supreme Court and Congress have condemned. *See Hibbs*, 538 U.S. at 729-35 (stating that Congress found that "States continue to rely on invalid gender stereotypes in the employment context, specifically in the administration of leave benefits" and that "[r]eliance on such stereotypes cannot justify . . . gender stereotypes in this area").

Finally, the Settlement conserves judicial resources by preventing what would surely be a lengthy and protracted litigation. As the Sixth Circuit recently explained, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Does 1- 2*, 925 F.3d at 899 (internal citation and quotation marks omitted).

## H. The Best Practicable Notice of the Settlement has been Provided to the Potential Class Members

The notice of the Settlement in this case was the "best notice that is practicable under the circumstances" and was provided "in a reasonable manner to all class members who would be bound by the proposal…." Fed. R. Civ. P. 23(c)(2)(B), (e)(1)(B).

As described above, the mailing of the Notice and the administration of the notice process ensured that the best notice practicable was sent to Potential Class Members and that the Settlement Class received due process. The Parties and the Settlement Administrator have complied with the notice procedures of the Settlement, which the Court approved in its Preliminary Approval Order. *See* ECF No. 11, ¶¶ 7-8; Fed. R. Civ. P. 23(c)(2); Fed. R. Civ. P. 23(e)(1)(B) ("The court must

direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ."). All Potential Class Members had ample notice of the Settlement and an opportunity to submit a Claim Form. *See* Section II.F, *supra*.

## I.    <u>Final Certification of the Settlement Class is Appropriate</u>

The Court conditionally certified the Settlement Class pursuant to Rule 23(b)(2) and/or Rule (23(b)(3). ECF No. 11, ¶ 3. The Court also appointed the Named Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel. *Id.* ¶ 4.

For the reasons stated above and set forth in Plaintiff's Motion for Preliminary Approval, Plaintiff respectfully submits that a final certification designation for the purposes of settlement is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and enter the Proposed Order.


Dated: January 29, 2024

/s/ Brian W. Denlinger
Craig J. Ackermann, Esq.
Brian W. Denlinger, Esq.
ACKERMANN & TILAJEF, P.C.
315 S. Beverly Drive, Suite 504
Beverly Hills, CA 90212
Telephone: (310) 277-0614
E-mail: cja@ackermanntilajef.com
     bd@ackermanntilajef.com

Matthew J. Clark (P76690)
Gregory, Moore, Brooks & Clark, P.C.
28 W. Adams Ave., Suite 300

Detroit, MI 48226
(313) 964-5600
matt@unionlaw.net
*Attorneys for Plaintiff*